HARRIS, Chief Justice.
The issue on appeal is whether the trial court erred in denying Albert Crider’s request that the jury be instructed on his right to self defense — specifically the castle doctrine.
Officers of the Ocoee Police Department requested and obtained a “no knock” warrant to enter and search Crider’s home. About midnight, the Orange County Sheriffs Department’s special weapons and tactics team (SWAT team) executed the warrant by first knocking on the door and, when there was no response, using a bullhorn to announce “Police with a search warrant. Open the door now.” When there was no response, the police broke down the door with a battering ram and entered the residence, announcing that they were police officers and ordering the occupants to put up their hands. The police entered through the kitchen, turned right, and observed Crider and his wife on a mattress on the floor of the living room. Their eight-year-old son was sleeping on the couch beside them. The only lighting in the living room came from the television and two extremely powerful hand held flashlights carried by the two lead officers. Crider apparently rose to his knees and was fumbling with a .22 semiautomatic handgun which he accidentally dropped. He momentarily looked up at the officers at that point, then looked back down again and retrieved the handgun. At this point, the lead officer was aiming his handgun at Crider and telling him to put his hands up and drop the weapon. Crider began to bring the handgun up in the direction of the officers, at which time the lead officer fired one round which struck Crider in the shoulder. This all happened in about ten seconds.
Crider was charged with aggravated assault on a law enforcement officer. At his trial, he testified that he never realized that the individuals breaking into his home were law enforcement officers. Rather, he believed that they were burglars because only two weeks before the SWAT team raid, two men broke into Crider’s house at about 1:15 A.M. They had hoods on their faces and wore dark clothes. Just as the SWAT team did, the earlier intruders entered by breaking down the same door. Crider and his family were asleep in the same room as they were when the SWAT team entered. Crider fought them off and they ran away. He called the police and Orange County deputies came to Crider’s house, took a statement from him, and looked around the house and the area for the intruders. The original intruders were never apprehended.
In response to this incident, Crider testified that he replaced the old wood frame door, which the intruders had broken down, with a steel door. He also changed the direction of the door to prevent it being kicked in again. Finally, he purchased a .22 caliber semiautomatic pistol and slept with it under his pillow.
Crider testified that in the days preceding the SWAT team raid, he had worked long hours in the evening at his job as a security guard and then had stayed awake during the day in order to spend time with his son as it was the weekend. As a result, he had been up for between thirty to forty-eight hours before going to bed the evening of the raid. He also testified that he had taken Adavan, a nerve medication, and Darvocet, a painkiller, for back pain.
Crider testified that on the night of the raid, the family went to bed around 8:30 P.M. or 9:00 P.M. The TV was on with the volume low; the window air conditioner unit was on and the windows were closed. The unit was only about four or five feet from Crider’s head. The first thing he remembered was hearing the door being kicked in. Crider testified that this rattled him, and he jumped up on his knees and reached for his gun, which he located and pulled out with his left hand. Because he is right-handed, he fumbled with and dropped the gun while attempting to remove the safety. He picked the gun back up and was still trying to remove the safety when he looked up and *1060 was “hit” in the eyes with a flashlight. He discerned a “bunch” of guys and immediately thought it was the same two intruders who had broken in two weeks earlier, only this time they brought more people with them. Crider then resumed attempting to remove the safety from his gun and also reached for his glasses on the ottoman next to the mattress upon which he had been sleeping. He testified that he was then shot.
The court instructed the jury on the primary charge of aggravated assault on a law enforcement officer and the lesser included offenses of aggravated assault, assault on a law enforcement officer, and assault. Defense counsel prepared and submitted two special jury instructions regarding self defense and defense of home (the castle doctrine), but the trial court refused to give them, finding that the standard jury instructions adequately covered both subjects. Defense counsel then requested that the court give the standard jury instruction on self defense, 3.04(d) Justifiable Use of Deadly Force. The following colloquy between the court and counsel then took place:
[DEFENSE COUNSEL]: I think the defense of habitat, which is under number four, certainly applies. In fact that’s the entire basis of my defense. And I’ve got numerous case law to support my arguments, Florida Supreme Court cases.
Specifically the Presley case, seven five thirty two cites United States Supreme Court case of Starr versus United States, one fifty three U.S. six fourteen.
There’s also an addendum to that, Your Honor. Because of the references made to the possession of cannabis on the premises I believe it’s very important for the jury to understand that under the Presley decision and Starr decision this is very clear that Mr. Crider does not forfeit — his right to self defense is not diminished because he’s committing a crime were [sic] when an assault is made on his dwelling.
It’s a nuance that is very very important for the jury’s consideration. I would urge the court to review this Starr decision which was eighteen ninety Supreme Court decision where U.S. Marshal was killed by a Cherokee Indian and the judge instructed the jury that the defendant — he was sentence[d] to death, went to the Supreme Court. The trial judge instructed the jury his right to self defense was diminished because he was a fugitive from justice and Supreme Court reversed and said the right to self defense is not diminished because someone is committing a crime or is in the wrong when he is assaulted.
And then the Florida Supreme Court in Presley cited the Starr decision in a case where a Negro killed a sheriff up in the panhandle back in around the turn of the century. And it’s a distinction that’s not covered in the standard jury instructions.
Because most of these cases were homicide cases where police officers were killed either entering houses to make an arrest and because this particular statute this aggravated assault on a law enforcement officer is a new statute and because this is [ — ] was not a homicide this particular nuance that Mr. Crider’s right to self defense is not diminished because they found two pounds of cannabis in his house is very very important.
THE COURT: I’m going to deny your request to give three point zero four D. If you read the second full paragraph there the instruction itself says the use of force likely to cause death or great bodily harm is justifiable only if the defendant reasonably believes that the force is necessary to prevent imminent death or great bodily harm to himself while resisting another[’]s attempt to murder him. And there’s no testimony to support that an attempt to commit a felony upon him [ — ] and there’s no evidence of an attempt to commit a felony upon him [or] an attempt to commit a felony in a dwelling house. There’s no evidence to support that or any attempt to commit a felony upon him in a dwelling house occupied by him.
It simply is inapplicable to the circumstances because this- — the evidence here is of the officers serving a warrant lawfully or not. And if they were not lawfully serving a warrant they haven’t met the elements of the offense and he would be found not guilty.
*1061 So it’s a question — the question — only fact question here is a question that is dealt with by the elements of the offense itself. It’s not an affirmative defense in the sense that you can admit the elements of the offense. And there are other facts that operate as an affirmative defense notwithstanding the fact that the elements themselves are met.
And so conceptually it doesn’t meet the factual test required to support a jury finding of that. I’m going to deny your request.
[DEFENSE COUNSEL]: Your Honor, in fact, the testimony is by Mr. Crider and by his confession, his believe [sic] was, an armed burglary was being committed upon him.
THE COURT: Yes, sir. And that would, if believed by the jury, would support their finding of not guilty.
[DEFENSE COUNSEL]: Only if the jury understands that he has that right to resist if that is his reasonable believe [sic]. And I would ask the court to read one particular — this is the Weaver case which is a Florida case and it was a murder of a police officer and—
THE COURT: Mr. Dick, I understand your arguments. I’ll deny your motion to give the self defense.
We agree that there was error and reverse.
The trial court’s reason for not giving the requested instruction as to the main charge (aggravated assault on a law enforcement officer), while correct, is itself the reason why the instruction must be given for the lesser included offense of aggravated assault. If the jury believed Crider’s testimony that he was not aware that the invaders were police, then, as the trial judge stated, that “would support their finding of not guilty.” But not guilty of what? All charges or merely the main charge?
The trial court apparently expected that, if the jury believed Crider on the issue of lack of knowledge of the identity of the police, the jury would completely exonerate him. At least defense counsel seems to have interpreted the court’s statement in that way because he cautioned the court that the jury would only exonerate his client if they were instructed that he had the right to defend his home, even with a firearm, if he believed that armed burglars were invading. Because the court failed to consider the appropriateness of this instruction (which was the entire theory of the defense) to the lesser included offenses, it refused to give the instruction.
The court was right in that the jury, apparently believing Crider, found him not guilty of aggravated assault on a law enforcement officer. Defense counsel was also right because, not being aware of the castle doctrine, the jury found Crider guilty of aggravated assault.
We find the requested instruction should have been given and reverse and remand to the trial court for further action consistent with this opinion.
REVERSED and REMANDED.
DIAMANTIS and THOMPSON, JJ., concur.